UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  4:10 CR 00027 CEJ (MLM) |
| | ) |
| CHESTER GOODSON, a/k/a "Chess," | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT GOODSON'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW, the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Sirena M. Wissler, Assistant United States Attorney for said District, and responds to defendant Chester Goodson's Motion to Suppress Evidence.

**STATEMENT OF RELEVANT FACTS**

1. In approximately March 2009, agents with the Federal Bureau of Investigations began investigating co-defendant Damon Brandon, about whom they had received information alleging that co-defendant Brandon was distributing cocaine base ("crack" cocaine) in the St. Louis metropolitan area.

2. On March 9, 2009, the FBI made a controlled purchase of cocaine base ("crack" cocaine) from co-defendant Damon Brandon, utilizing a confidential informant.  During this transaction, co-defendant Brandon provided the informant with approximately 9 grams of cocaine base ("crack") in exchange for $600 in cash.

3. At the time of the March 9, 2009 purchase of cocaine base from co-defendant Damon

1

Brandon, the confidential informant was accompanied by an undercover FBI agent (hereinafter, "UC"), and the transaction was recorded by a concealed audio recording device.

4. Following the introduction of the UC to Damon Brandon, UC began purchasing cocaine base ("crack") directly from Damon Brandon, without the confidential informant as an intermediary.

5. Throughout the Spring and Summer of 2009, the investigation into co-defendant Brandon's narcotics related activities continued. Investigators conducted controlled purchases of cocaine base using either the confidential informant or the UC on approximately 15 separate occasions.

6. On or about March 30, 2009, the UC made contact with co-defendant Brandon in an effort to arrange a transaction during which he/she would purchase "crack" cocaine from co-defendant Brandon. After the arrangements were made, the UC received a telephone call from co-defendant Brandon advising that he was sending his cousin, who would be driving a Pontiac Grand Prix, to conduct the transaction.

7. At the arranged time and location, the undercover agent met with a black male driving a Pontiac Grand Prix. The unknown black male identified himself as "Chess." The undercover agent provided "Chess" with $1200 in cash, in exchange for which "Chess" provided the undercover agent with approximately 24 grams of cocaine base. The undercover agent later positively identified "Chess" as the defendant, Chester Goodson.

8. On or about April 16, 2009, the UC once again made contact with co-defendant Damon Brandon in an attempt to purchase cocaine base. Again the UC received a telephone call in advance of the arrangement meeting, during which co-defendant Brandon advised that he was

sending his cousin on his behalf.  At the agreed upon time, and at the agreed upon location, the UC met with a black male later identified as the defendant Chester Goodson, and exchanged $2300 in cash for a substance that was later confirmed to consist of approximately 54 grams of cocaine base.

9.  Co-defendant Brandon conducted additional transactions in May, June, July, and August of 2009.  During each of these transactions, either co-defendant Brandon or defendant Goodson acting on his behalf exchanged cocaine base for cash.  In the aggregate, the total amount of confirmed cocaine base ("crack" cocaine) involved in these transactions was approximately 136 grams.

**ARGUMENT**

**I.      No Fourth Amendment violation occurred when an undercover agent of the FBI obtained cocaine base from the defendant, who willingly sold it to the agent.**

It is well settled that "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ."  *U.S. Const. Amend. IV*.  It is important to note, however, that the Fourth Amendment prohibits only searches that are "unreasonable."  Moreover, not every instance in which evidence is obtained in a criminal case constitutes a "search" or "seizure" as contemplated by the Fourth Amendment.  Such is the situation in the instant case, in which the only evidence the government intends to utilize at trial is cocaine base ("crack") that defendant Chester Goodson willingly sold to an undercover agent of the FBI.  "A purchase of drugs by a law enforcement officer acting as an undercover agent is not a search or seizure under the fourth amendment."  *United States v. Davis*, 646 F. 2d 1298, 1301 (8th Cir. 1981), *citing Lewis v. United States*, 385 U.S. 206, 210

3

(1966).  Because the defendant's willing and voluntary sale of cocaine base to an undercover agent does not implicate the Fourth Amendment, it cannot operate so as to require the suppression of the evidence.  Defendant's motion is therefore without merit.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that defendant Goodson's motion to suppress evidence be denied.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

  /s/ Sirena M. Wissler
SIRENA M. WISSLER #505777
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2010, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Peter M. Cohen, Attorney for defendant Chester Goodson.

/s/ Sirena M. Wissler
SIRENA M. WISSLER
Assistant United States Attorney